UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

FREDY NEPTALY CALDERON
LOPEZ
      Petitioner,

v.                                                                No. 1:25-CV-226-H

TODD LYONS, et al.,
      Respondents.

## <u>ORDER</u>

Before the Court is the petitioner's supplemental claim for habeas relief, which challenges the government's position that immigration judges lack authority to grant bond hearings to current and future aliens who illegally enter the United States and are civilly detained. Dkt. No. 9. He seeks relief based on recent orders from the Central District of California in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873. There, the Central District issued three orders that declare the government's policy unlawful on a class-wide basis nationwide. The petitioner asserts that because he is a member of the Central District's class, he should prevail here. Thus, this Court must determine whether it is bound by the Central District's orders.

For three reasons, it is not. First, precedent makes clear that the orders are advisory opinions because they do not redress the alleged harm and are not preclusive. The vacatur order sets aside one policy, but it declined to set aside a broader, independent decision from the Board of Immigration Appeals. Thus, the orders do not change immigration judges' obligations to deny bond hearings, and they afford no preclusive relief. Second, and independently, the plain language of the Immigration and Nationality Act demonstrates that the Central District lacked statutory authorization to extend declaratory and vacatur

relief to a nationwide class of detainees.  Finally, the two necessary implications of the Central District's purported relief—reconstitution of all bond-hearing injunction claims in the Central District or the mandatory application of the Central District's reasoning in all district courts nationwide—would require this Court to violate Supreme Court precedent. Because the Central District's orders were unauthorized, the Court rejects the petitioner's assertion that they bind this Court and mandate the requested relief.

For these reasons, and as detailed below, the petitioner's supplemental habeas claim (Dkt. No. 9) is denied.  The Court recognizes it is unusual to address the authority of another court to resolve claims before it.  This Court only does so because the petitioner asserts that he should receive habeas relief as the necessary and binding result of the Central District's nationwide and unauthorized orders in *Maldonado Bautista*.  *See* ___ F. Supp. 3d ___, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025) (granting declaratory relief to petitioners); ___ F.R.D. ___, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) (certifying class and granting class-wide declaratory relief); No. 5:25-CV-1873, Dkt. No. 92 (C.D. Cal. Dec. 18, 2025) (vacating DHS's mandatory-detention policy but declining to vacate *Yajure Hurtado*'s mandatory-detention policy).  The Court has yet to reach the remaining merits of the petitioner's habeas petition and will do so in due course.  In resolving the petitioner's remaining arguments for relief, the Court will consider the *Maldonado Bautista* orders as persuasive authority, but the Court will not accord them any binding value.

## 1.    Background

### A.    The DHS Policy and *Yajure Hurtado*

In July 2025, the U.S. Department of Homeland Security issued a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission."  *See*

*Maldonado Vazquez v. Feeley*, ___ F. Supp. 3d ___, No. 2:25-CV-1542, 2025 WL 2676082, at
*5 & n.2 (D. Nev. Sept. 17, 2025) (describing the leaked DHS notice and noting that the
government did not object to its authenticity).  This notice advised that "section 235 of the
Immigration and Nationality Act (INA), rather than section 236"—that is, the mandatory-
detention provision of 8 U.S.C. § 1225(b)(2), not the discretionary-detention provision of 8
U.S.C. § 1226—"is the applicable immigration detention authority for all applicants for
admission."  *ICE Memo: Interim Guidance Regarding Detention Authority for Applicants for
Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[1]

The BIA adopted this broader application of the mandatory-detention provision in
*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  The BIA acknowledged that "for
years Immigration Judges have conducted bond hearings for aliens who entered the United
States without inspection," but it did "not recall either DHS or its predecessor, the
Immigration and Naturalization Service," ever challenging that practice.  *Id.* at 225 n.6.  But
after reviewing the parties' contentions, the BIA determined that immigration judges lack
authority to grant aliens who illegally enter the United States bond hearings.  *Id.* at 229.
Thus, two independent agency policies—the DHS policy and the BIA decision in *Yajure
Hurtado*—concluded that aliens who illegally enter the United States are not entitled to bond
hearings.

In the wake of this shift in policy, alien detainees have filed petitions in district courts
throughout the United States seeking relief on the grounds that the change in policy and the
resulting detentions are unlawful.  *See, e.g.*, *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___,

---

[1] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

No. 1:25-CV-177, 2025 WL 3264478, at *4 (N.D. Tex. Oct. 24, 2025) (collecting cases). This flurry of litigation in many different courts is to be expected because the immediate-custodian rule provides "that in habeas challenges to present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official," and that jurisdiction lies only in the district of confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 443 (2004); 28 U.S.C. § 2241(d) ("the application [for a writ of habeas corpus] may be filed in the district court for the district wherein such person is in custody"). As is to be expected, some petitioners have secured habeas relief, and others have failed. *See infra* nn. 8–13. Appeals have followed. *See, e.g.*, *Lema Tamay v. Scott*, No. 25-2060 (1st Cir.) (pending appeal of bond-hearing grant); *Buenrostro-Mendez v. Bondi*, No. 25-20496 (5th Cir.) (same).

### B.    The *Maldonado Bautista* Litigation

In June 2025, ICE detained Lazaro Maldonado Bautista and numerous other aliens during an operation in Los Angeles. 2025 WL 3289861, at *1. Maldonado Bautista and his co-petitioners filed a combined habeas action in the Central District of California. Their original petition challenged "the DHS change in policy" as violative of the discretionary-detention provision, Fifth Amendment, and the Administrative Procedure Act (APA). *See* 2025 WL 2670875, at *1 (C.D. Cal. July 28, 2025) (TRO order). The petitioners also filed an application for a TRO that "specifically request[ed]" relief in the form of individualized bond hearings before an immigration judge under the discretionary-detention provision. *See* 2025 WL 2670875, at *1 (C.D. Cal. July 28, 2025) (TRO order). The petitioners also sought to prevent the respondents from removing them outside the Central District. *Id.*

The Central District granted the TRO application in full and ordered the petitioners to be released unless provided with an individualized bond hearing within seven days of the TRO order.  *Id.* at *8.  The parties in that case both filed documents[2] indicating that, as a result of the TRO order, "each named [petitioner] received a bond hearing in immigration court at which the [immigration judge] found that each [petitioner] did not pose a flight risk or danger, and granted release on bond."  No. 5:25-CV-1873, Dkt. Nos. 42-3 at 16–17 (petitioners);[3] 60 at 16 (respondents);[4] 2025 WL 3289861, at *2 (noting evidence of effected relief).

Just after the Central District granted the TRO, the petitioners filed an amended complaint seeking declaratory relief on behalf of a putative class, vacatur of the DHS policy under the APA, and "individual injunctions when requested as necessary to secure the rights of class members."  No. 5:25-CV-1873, Dkt. No. 15 at 34–35.[5]  Because the BIA had not yet issued its decision in *Yajure Hurtado* independently requiring the same policy, the petitioners did not challenge that ruling in their complaint.  *See* No. 5:25-CV-1873, Dkt. No. 92 at 5.  And even after the *Yajure Hurtado* decision issued, the petitioners did not amend their complaint to seek that decision's vacatur.  *Id.*  The petitioners also moved for partial

---

[2] The documents are sealed from public view.  However, one of the several legal organizations representing the petitioners in *Maldonado Bautista* (the Northwest Immigrant Rights Project) has published documents from the case on their website.  The Court attaches them here for the benefit of the reader.

[3] https://nwirp.org/our-work/impact-litigation/assets/bautista-noem/42-3%20statement%20of%20uncontroverted%20facts.pdf [https://perma.cc/UH4M-T55G].

[4] https://nwirp.org/our-work/impact-litigation/assets/bautista-noem/60%20gov't%20opp%20to%20Ps%20msj.pdf [https://perma.cc/4AAR-9PQT].

[5] https://nwirp.org/our-work/impact-litigation/assets/bautista-noem/15ClassComplaintAmendedPetition.pdf [https://perma.cc/EG6B-54T6].

summary judgment requesting the Central District to "declare the new DHS Policy unlawful" and to vacate the rule under the APA.  2025 WL 3289861, at *5.

The Central District retained jurisdiction over the case and issued the three orders that are now at the center of this habeas petition: the November 20 order granting declaratory relief to the individual petitioners, the November 25 order certifying a class and extending declaratory relief to all class members, and the December 18 order entering final judgment and vacating the DHS policy.[6]

In the November 20 order, the Central District found that the INA did not preclude judicial review of the petitioners' claims.  *Id.* at *3–4 (discussing 8 U.S.C. § 1252(a), (b)(9), (e)(3)(A)).  It then analyzed the mandatory- and discretionary-detention provisions and concluded that the plain text of the INA required the petitioners to receive bond hearings pursuant to the discretionary-detention provision.  *See id.* at *11.  After reviewing the provisions, the Central District entered declaratory relief without preclusive effect.  *See id.* (granting partial summary judgment after declaring DHS policy unlawful); 2025 WL 3288403, at *9 (confirming the previous order was merely declaratory). At that time, the Central District declined to enter final judgment.  2025 WL 3289861, at *11.

On November 25, the Central District certified the Bond Eligible Class, consisting of all aliens "who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention" under the discretionary-detention provision, paragraph (b)(1) of Section 1225, or Section 1231 "at the time [DHS] makes an initial custody determination."  2025 WL

_____

[6] There are two December 18 orders—the one described above, and a second order consolidating the Central District's prior discussions on the three orders.  In this Order, "the December 18 order" means Dkt. No. 92.  The additional order is Dkt. No. 93.

3288403, at *9.  Upon creating the class, the Central District purported to "extend the same declaratory relief granted to [the] Petitioners to the Bond Eligible Class as a whole."  *Id.*  But the Central District did not enter final judgment.

Then, on December 18, the Central District entered an order clarifying its relief.  *See* No. 5:25-CV-1873, Dkt. No. 92.  The order granted the petitioners' motion to vacate the DHS policy.  *Id.* at 5–6.  However, the petitioners' complaint did not seek vacatur of *Yajure Hurtado*, which offers a broader mandate for immigration judges and DHS employees to deny bond hearings on independent grounds.  *Id.* at 6.  The Central District casted doubt on *Yajure Hurtado* for the same reasons it questioned the DHS policy, suggested it was "no longer controlling" and "no longer tenable," but expressly declined to vacate that decision. *Id.*  In addition, owing to the respondents' "noncompliance" with the Central District's prior declaratory judgment, the Central District entered final judgment on the declaratory-relief and vacatur claims.  *Id.* at 12.[7]

### C.    Bond Petitions Post-*Maldonado Bautista* in the District Courts

In the few short weeks since the Central District issued its orders, numerous courts have encountered petitioners seeking relief under the class action.  The Court observes more

---

[7] It is difficult to understand the government's conduct as noncompliant, given that—without preclusive effect or final judgment—these orders were legal nullities.  *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (noting there are no declaratory-judgment equivalents to preliminary injunctions); *Catlin v. United States*, 324 U.S. 229, 233 (1945) (a judgment is only final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment"); *see* 28 U.S.C. § 2201(a).  Indeed, until December 18, the Central District repeatedly insisted its relief was *only* declaratory, which violated "Article III's strict prohibition on 'issuing advisory opinions.'" *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) (quoting *Carney v. Adams*, 592 U.S. 53, 58 (2020)); *see, e.g.*, 2025 WL 3288403, at *9 (observing that declaratory relief would not "interfere with the Government's efforts to detain noncitizens under [Section] 1225(b)(2)" because "a declaratory judgment . . . is not ultimately coercive") (quotation omitted).

than fifty orders published digitally on Westlaw that address the Central District's purported class-wide relief. The response has been varied.

A substantial number of courts have accepted the Central District's orders as binding, granting habeas petitions in partial reliance on the orders. One court granted habeas relief because "the *Maldonado Bautista* court has already declared a statutory violation on behalf of [the] Petitioner as a class member." *Morales-Flores v. Lyons*, No. 1:25-CV-1640, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025). Another court found that a petitioner belonged to the *Maldonado Bautista* class "and is entitled to the same relief." *Mendes v. Hyde*, Civ. A. No. 25-CV-627, 2025 WL 3496546, at *3 (D.R.I. Dec. 5, 2025). It therefore ordered the petitioner's release and a bond hearing. *Id.*[8]

Several courts have treated the Central District's orders as persuasive without adopting the decision as binding.[9] A plurality of courts have acknowledged the orders without stating whether they are binding.[10] Other courts have joined this Court in

---

[8] *See also Macias v. Raycraft*, No. 4:25-CV-2642, 2025 WL 3525262 (N.D. Ohio Dec. 9, 2025); *Jean v. Bondi*, No. 2:25-CV-2487, 2025 WL 3500562 (W.D. Wash. Dec. 5, 2025); *Santuario v. Bondi*, Civ. No. 25-4296, 2025 WL 3469577 (D. Minn. Dec. 2, 2025); *Alatorre Rodriguez v. Larose*, No. 3:25-CV-2940, 2025 WL 3456475 (S.D. Cal. Dec. 2, 2025).

[9] *See Padilla-Ugsha v. Ladwig*, No. 2:25-CV-3045, 2025 WL 3638007 (W.D. Tenn. Dec. 15, 2025); *Velasco-Sanchez v. Raycraft*, No. 2:25-CV-13730, 2025 WL 3553672 (E.D. Mich. Dec. 11, 2025); *Perez Hernandez v. Chestnut*, No. 1:25-CV-1388, 2025 WL 3563432 (E.D. Cal. Dec. 12, 2025).

[10] A substantial number of these decisions have come from a single judge serving in the District of Nevada. *See, e.g.*, *Livia Vicharra v. Henkey*, No. 2:25-CV-2336, 2025 WL 3564725 (D. Nev. Dec. 12, 2025). Courts in several other districts have likewise cited the orders without addressing their bindingness. *See Lopez Bernal v. Trump*, No. C25-198, 2025 WL 3669871 (N.D. Iowa Dec. 17, 2025); *Arredondo-Silva v. Raycraft*, No. 2:25-CV-13674, 2025 WL 3625781 (E.D. Mich. Dec. 15, 2025); *Garcia Rodriguez v. Raycraft*, No. 2:25-CV-13606, 2025 WL 3565685 (E.D. Mich. Dec. 12, 2025); *Reyes Benitez v. Noem*, No. 25-CV-3298, 2025 WL 3560575 (S.D. Cal. Dec. 12, 2025); *Cahuec v. Soto*, Civ. A. No. 25-17389, 2025 WL 3524463 (D.N.J. Dec. 9, 2025); *Fuentes v. Olson*, No. 25-CV-4456, 2025 WL 3524455 (D. Minn. Dec. 9, 2025); *Mateo v. Noem*, No. 4:25-CV-151, 2025 WL 3499062 (W.D. Ky. Dec. 5, 2025); *Aranda v. Olson*, No. 4:25-CV-156, 2025 WL 3499061 (W.D. Ky. Dec. 5, 2025); *Ramirez v. Larose*, No. 25-CV-3257, 2025 WL 3493567 (S.D. Cal. Dec. 5, 2025).

requesting supplemental briefing on the issue.[11]  And other courts have addressed habeas claims while only citing the November 20 relief order and not the November 25 class-certification order.[12]  This Court appears to be the first to consider both orders in combination with the December 18 order.

Finally, a few courts have either rejected the Central District's orders or have expressed skepticism about their application.  For example, one court expressed skepticism at the use of a class action through individual habeas petitions as a potential subversion of the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).  *Ramirez Melgar v. Bondi*, No. 8:25-CV-555, 2025 WL 3496721, at *15 (D. Neb. Dec. 5, 2025).  However, that court declined to reject the Central District's orders outright, instead denying the petitioner's claim and suggesting he could refile in the Central District.  *Id.*; *Velasquez Bartolon v. Bondi*, No. 1:25-CV-747, 2025 WL 3674604, at *10 (S.D. Ohio Dec. 18, 2025) (same).  Another court rejected the orders' application because the judgment in *Maldonado Bautista* was not yet final and denied habeas relief.  *See Martinez Chavez v. Ripa*, No. 2:25-CV-1088, 2025 WL 3628276, at *2 n.2 (M.D. Fla. Dec. 15, 2025).  Yet another court found the class non-preclusive and granted habeas relief on the merits.  *Lopez-Neria v. Bondi*, No. 5:25-CV-1650, 2025 WL 3654329, at *5 (W.D. Tex. Dec. 12, 2025).[13]

---

[11] *Chunchi v. Francis*, 25 Civ. 10249, 2025 WL 3564495 (S.D.N.Y. Dec. 12, 2025); *Silva Hernandez v. Noem*, No. 2:25-CV-2304, 2025 WL 3470903 (D. Nev. Dec. 3, 2025).

[12] That count includes a magistrate judge serving in the Central District.  *See Cabanilla Arias v. Warden*, No. 5:25-CV-3228, 2025 WL 3654580 (C.D. Cal. Dec. 16, 2025); *see also J-C-R-M v. Wamsley*, No. 3:25-CV-990, 2025 WL 3527108 (D. Or. Dec. 9, 2025).

[13] A number of these decisions have come from a single judge serving in the Middle District of Florida.  *See Martinez Chavez*, *supra*.  Courts in several other districts have joined the rejection of *Maldonado Bautista*.  *See Reyes-Martinez*, No. 4:25-CV-150, 2025 WL 3680330 (W.D. Ky. Dec. 18, 2025); *Rodriguez Lara v. Bondi*, No. SA-25-CA-1581, 2025 WL 3654263 (W.D. Tex. Dec. 16, 2025);

D.     **The Petition in this Case**

Amidst the confusion over whether the *Maldonado Bautista* class action governs individual bond-issue petitions enters Fredy Neptaly Calderon Lopez.  Calderon Lopez seeks habeas relief in this Court.  ICE detained Calderon Lopez, a Guatemalan citizen, on September 2, 2025.  Dkt. No. 1 at 4–5.  Because Calderon Lopez is in the United States illegally, is in detention, and is detained under the mandatory-detention provision, he is a member of the Bond Eligible Class.  *See* Dkt. No. 9 at 2.  Calderon Lopez's requests for relief based on *Maldonado Bautista* (Dkt. No. 9) were filed separately as a supplement to his habeas petition (Dkt. No. 1) days after the Central District issued its class-wide relief order.  The Court ordered the respondents to address Calderon Lopez's contentions.  Dkt. No. 10; *see Nguyen v. Noem*, 797 F. Supp. 3d 651, 660 (N.D. Tex. 2025) (noting the Court may "allow development of the record through supplemental briefing") (citing *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996)).  The respondents timely responded, asserting, *inter alia*, that the Central District's orders lack preclusive effect and do not bind this Court's review of the habeas petition's merits.  Dkt. No. 11 at 4.  The parties have fully briefed this habeas petition (Dkt. Nos. 1; 7; 9; 11).  The petition is ripe for review.

2.     **Analysis**

If the Central District's orders are binding on this Court, then this Court must either deny habeas relief and direct the petitioner to continue litigation in the Central District, or else adopt the Central District's orders as a matter of res judicata, bind the respondents to its

---

*Coronado v. Sec'y Dep't of Homeland Sec.*, No. 1:25-CV-831, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025); *Murillo-Rodriguez v. Bondi*, No. 5:25-CV-1684, 2025 WL 3654335 (W.D. Tex. Dec. 12, 2025); *Morales Delgado v. Noem*, ___ F. Supp. 3d ___, No. 9:25-CV-329, 2025 WL 3639439 (E.D. Tex. Dec. 12, 2025); *Shi v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-274, 2025 WL 3637288 (S.D. Tex. Dec. 12, 2025); *Ramirez v. Lewis*, No. 4:25-CV-143, 2025 WL 3553676 (W.D. Ky. Dec. 11, 2025).

declaration, and grant the habeas petition.  If the Central District's orders are not binding, then the Court may continue to consider the petitioner's case on the remaining merits and consider the Central District's orders as persuasive, non-binding authorities.

A dispute in this posture is unusual, but not unheard of.  As Justice Story remarked, the traditional comity between courts "does not prevent an inquiry into the jurisdiction of the court in which the original judgment was given." *Old Wayne Mut. Life Ass'n v. McDonough*, 204 U.S. 8, 16 (1907) (quoting Joseph Story, Commentaries on the Constitution of the United States § 1313 (1833)).  It is "a subject [that] may be inquired into every other court, when the proceedings in the former are relied upon, and brought before the latter, by a party claiming the benefit of such proceedings." *Williamson v. Berry*, 49 U.S. (8 How.) 495, 540 (1850); *Old Wayne*, 204 U.S. at 16–17 (same).  Indeed, traditional habeas proceedings normally could only challenge "the power and authority of the court" or other detaining authority "to act." *Brown v. Davenport*, 596 U.S. 118, 129 (2022) (quotation omitted).  While the conclusions of another court, when enforced onto a peer court, are generally "unassailable collaterally," an exception has always existed for "lack of jurisdiction." *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78 (1939); *Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 202–03 (1830) (Marshall, C.J.) (same).

When the issuing court lacks jurisdiction, "its judgments and orders are nullities; they are not voidable, but simply void, and form no bar to a recovery sought . . . in opposition to them; they constitute no justification, and all persons concerned in executing such judgments . . . are considered in law as trespassers." *Williamson*, 49 U.S. at 541 (quoting *Elliott v. Piersol*, 26 U.S. (1 Pet.) 328, 329 (1828)); *Watkins*, 28 U.S. at 203 ("An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute

nullity[.]").  Thus, this Court must consider the Central District's authority to issue the November 20, November 25, and December 18, 2025 orders.

For several independent reasons, the Court concludes that it is not bound by the Central District's purported relief.  In light of longstanding jurisprudence and precedent, the three orders—including the December 18 vacatur order—are advisory opinions.  In addition, given Supreme Court precedent and the plain language of the Immigration and Nationality Act, the Central District lacked authorization or jurisdiction to extend declaratory and vacatur relief to a nationwide class of similarly situated detainees.  Finally, the two necessary implications of the Central District's purported relief—reconstitution of all bond-hearing injunction claims in the Central District or the mandatory application of the Central District's reasoning in all district courts nationwide—would require this Court to violate Supreme Court precedent.

### A.    The *Maldonado Bautista* orders exceed the Central District's authority and are thus not binding.

The petitioner seeks relief from the DHS detention policy because, among other things, he asserts that the Central District's class-wide declaratory and vacatur relief apply here and bind this Court.  But it is apparent that the Central District's orders exceed that court's authority under Article III and the INA.  In other words, they are advisory opinions that cannot bind this Court.

### i.    The Central District's orders do not offer redress.

The first reason that this Court cannot accept the orders of the Central District in *Maldonado Bautista* is that these declarations lack preclusive relief of any kind.  Indeed, the Central District recognized that its November 25 class-wide relief order would not "interfere with the Government's efforts to detain noncitizens under [Section] 1225(b)(2)" because "a

declaratory judgment . . . 'is not ultimately coercive.'" 2025 WL 3288403, at *7 (quoting *Steffel v. Thompson*, 415 U.S. 452, 471 (1974)). Its December 18 order, though it claims to set aside the DHS policy, is equally ineffective because it does not vacate *Yajure Hurtado*'s broader, equally binding policy prohibiting immigration judges from granting bond hearings to the Bond Eligible Class. *See* I. & N. Dec. at 229. Without preclusive relief, the November 20, November 25, and December 18 orders are advisory opinions.[14]

The "oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Flast v. Cohen*, 392 U.S. 83, 96 (1968) (quoting Charles Alan Wright, Federal Courts 34 (1963)). It is a limit that is peculiar to our Constitution. At the Founding, English courts gave advisory opinions, *id.*, and to this day many American state courts "do all sort of non-judicial things that federal courts cannot," *Stanford ex rel. Phillips v. Brandon Nursing & Rehab. Ctr., LLC*, ___ F.4th ___, 2025 WL 3237635, at *15 (Oldham, J., dissenting) (citing William Baude et al., Hart & Weschler's The Federal Courts and the Federal System 75 (8th ed. 2025)).

The Framers of the Constitution could have adopted a similar system, but they did not. Against factions that opposed inferior federal courts and factions that would have tightly curtailed their jurisdiction,[15] the Framers adopted Article III, which in its second section defines the subject matter capable of federal judicial review and, critically, limits all

---

[14] As discussed *infra*, Analysis § 2(A)(ii), because the Central District lacks jurisdiction under the INA to hear the APA challenge to the DHS policy, its December 18 order lacks the authority necessary to vacate the policy. For the sake of its analysis in this section, though, this Court will assume the DHS policy was truly vacated.

[15] *See id.* at *4 (citing Henry J. Friendly, The Historic Basis of Diversity Jurisdiction, 41 Harv. L. Rev. 483, 485 (1928); Scott Dodson, Beyond Bias in Diversity Jurisdiction, 69 Duke L.J. 267, 272 (2019)).

review to "Cases" and "Controversies."  That limit was apparent to the first generation of Supreme Court Justices, who wrote to President Washington that the matter of "calling on the heads of departments for opinions," in consideration of the separation of powers, was "purposely as well as expressly united to the executive departments."  Letter from John Jay to George Washington (Aug. 8, 1793), *in* 4 The Founders' Constitution No. 34 (Philip B. Kurland & Ralph Lerner, eds. 2000).

Thus, Article III sets forth parallel requirements to prevent advisory opinions.  First, the plaintiff must have a claim that is likely to be redressed through judicial relief.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021).  Redress depends on "a federal court's judgment, not its opinion."  *Haaland*, 599 U.S. at 294.  The plaintiff who does not ask for preclusive relief, but only declaratory relief, thus lacks standing.  *Id.*; *see Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113–14 (1948) ("It has . . . been the firm and unvarying practice of Constitutional Courts to render no judgments not binding and conclusive on the parties.").

Second, and as a corollary, Article III deprives federal courts of the "power to decide questions that cannot affect the rights of litigants in the case before them."  *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  A mere opinion does nothing: "the court [must] be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power."  *Haaland*, 599 U.S. at 294 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in judgment) (emphasis in original)).  Likewise, the potential that the "decision might persuade actors who are not before the court" is plain hopefulness, not authority, and is thus

"contrary to Article III's strict prohibition on issuing advisory opinions." *Id.* (quotation omitted); *see United States v. Juvenile Male*, 564 U.S. 932, 937 (2011) (holding that a "possible, indirect benefit in a future lawsuit" does not preserve standing); *United States v. Texas*, 599 U.S. 670, 691 (2023) (Barrett, J., concurring in judgment) (explaining that "sham[ing]" litigants is not a form of relief). In other words, a court's opinion is within the realm of Article III only if it offers some kind of preclusive relief. *Haaland*, 599 U.S. at 293.

The court that exceeds its Article III authority issues an advisory opinion. An advisory opinion is a "legal declaration," much like a treatise or a litigant's brief, but it "[can]not affect anyone's rights." *Fendon v. Bank of Am., N.A.*, 877 F.3d 714, 716 (7th Cir. 2017) (Easterbrook, J.); *see McGrath v. Kristensen*, 340 U.S. 162, 168 (1950) (noting a question would be justiciable if "[t]he judgment sought in [the] proceeding would be binding and conclusive on the parties if entered"). This conclusion is a matter of necessity: the power of judicial review must give meaning to the Constitution and laws of the United States. When judicial review is applied contrary to the text of Article III, "it thus reduces to nothing what we have deemed the greatest improvement on political institutions—a written constitution." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803). Where no party is bound, it follows that no fellow court can be bound, either.

The critical issue here is the Central District's method of relief. In its order granting relief to the individual petitioners, the Central District acknowledged the present motion "[sought] to declare the new DHS policy as unlawful." 2025 WL 3289861, at *2. By this time, all of the individual petitioners had received individualized bond hearings through the Central District's TRO and had been released from ICE custody. *Id.* The Central District's order merely declared the DHS policy unlawful. *Id.* at *11. In its class-certification order,

the Central District then "extend[ed] the same declaratory relief granted to [the] Petitioners

to the Bond Eligible Class as a whole."  2025 WL 3288403, at *9.  It reiterated that its relief

was "not ultimately coercive."  *Id.* at *7 (quoting *Steffel*, 415 U.S. at 471).  It was

declaratory: nothing more, nothing less.

Its December 18 order seeks to resolve the lack of preclusive relief by declaring the

DHS policy vacated.  But in doing so, the Central District concedes that "the MSJ Order

does not apply to vacatur of *Yajure Hurtado*."  No. 5:25-CV-1873, Dkt. No. 92 at 5.  This

gives the game away.  The Nation's immigration judges—bound by the BIA—must follow

*Yajure Hurtado* as binding precedent.  8 C.F.R. § 1003.1(g)(1).  That same requirement also

extends to "all officers and employees of DHS."  *Id.*  Thus, it is *Yajure Hurtado*, not the DHS

policy, that strips the immigration courts of the ability to afford bond hearings to aliens who

illegally entered the United States without apprehension.  And although the Central District

criticizes *Yajure Hurtado* as "no longer controlling" and "no longer tenable," that plainly

cannot be the case, because the independent BIA decision was not vacated by the December

18 order.  *See* No. 5:25-CV-1873, Dkt. No. 92 at 6.  That remark is nothing more than mere

opinion.  And it can only be the Central District's opinion because, as it conceded, it could

not grant vacatur of a policy that was not challenged in the petitioners' complaint.  *See* No.

5:25-CV-1873, Dkt. No. 92 at 6.

The Central District also claims that "including vacatur as a form of relief in the

judgment would satisfy Article III redressability."  No. 5:25-CV-1873, Dkt. No. 93 at 30.

But this elides the problem: redress without substance is no redress at all.  *See Uzuegbunam v.*

*Preczewski*, 592 U.S. 279, 290 (2021) (contrasting nominal damages from "damages [that] are

purely symbolic" and "provide[] no actual benefit to the plaintiff").  Vacatur is only a means

– 16 –

of redress if it provides preclusive relief to the plaintiff.  *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (noting that an APA claimant must still satisfy Article III).  The Central District suggests "vacatur would . . . facilitate the operation of [Section] 1226(a)," but that cannot be the case so long as *Yajure Hurtado* prevents immigration judges and all other DHS employees from giving Section 1226(a) the effect the Central District desires.  *See* No. 5:25-CV-1873, Dkt. No. 93 at 29; 8 C.F.R. § 1003.1(g)(1) (binding DHS employees to BIA decisions).  Finally, the Central District cites *Haaland* for the proposition "that the judgment, not the opinion, of the court remedies an injury and thus demonstrates redressability."  No. 5:25-CV-1873, Dkt. No. 93 at 30.  But *Haaland* makes clear that any judgment that lacks preclusive relief is advisory and non-binding.  *See* 599 U.S. at 293–94.

Ask, then: "What rights are affected here?"  All of the individual petitioners had received bond hearings and were subsequently released.  The Central District set aside *one* rule, but declined to set aside the other independent and broader rule.  All DHS employees who were bound by the DHS policy remain bound to deny bond hearings on the basis of *Yajure Hurtado*.  Thus, nothing in these orders restrain immigration judges from denying bond to the other class members, nor do these orders require immigration judges to do likewise.  ICE's conduct is now declared unlawful and one policy is set aside, but it is equally capable of detaining aliens without bond today to the same extent it could on the day before the November 20, November 25, and December 18 orders.

The only change in course is that the Central District has indicated to the parties its belief that ICE's conduct is unlawful and that one of the two independent policies mandating the denial of individualized bond hearings is vacated.  "What saves proper

declaratory judgments from a redressability problem . . . is that they have preclusive effect

on a traditional lawsuit that is imminent." *Haaland*, 599 U.S. at 293 (quoting *Brackeen v.

Haaland*, 994 F.3d 249, 448 (Costa, J., concurring in part and dissenting in part)).  At best,

the Central District's orders might give government actors pause.  Certainly, the Central

District's substantively empty vacatur of the DHS policy and its criticism of *Yajure Hurtado*

do just that.[16]  But the power to "persuade" does not confer preclusive effect.  *Id.* at 294.

"Without preclusive effect, a declaratory judgment is little more than an advisory opinion."

*Id.* at 293 (quotation omitted).  Because the orders do not affect the legal relations of the

parties in that case, the orders are advisory.  Because they are advisory, they do not bind this

Court.

          ii.       **The Central District's orders are likewise unauthorized because they exceed the INA's limits on judicial review.**

Even if the Central District's orders were not advisory and were consistent with

Article III, this Court is not bound to follow them because the Central District's orders are

also unauthorized by the INA's limits on judicial review.  These orders violate the INA for

two reasons.  First, the Central District lacks jurisdiction to resolve the legality of an INA

provision or policy because the INA's venue-limiting clause permits the petitioners to

advance their claims only in the District for the District of Columbia.  Second, the INA

prohibits any class-action relief other than relief that comports with the venue-limiting

---

[16] The Central District proclaims that *Yajure Hurtado* "is no longer controlling" in reliance on *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  No. 5:25-CV-1873, Dkt. No. 93 at 20.  But that passage of *Loper Bright* does not suggest vacatur of the DHS policy works as a one-two punch.  It merely says that a court reviewing an agency action under the APA must "exercise[] its independent judgment." *Id.* at 398.  Because the Central District expressly declined to vacate *Yajure Hurtado*, that decision stands.

clause.  Thus, the petitioner's assertion that the Central District's orders control the outcome

is undermined by the Central District's lack of authority to adjudicate this point.

### a.    The Central District lacks authority to adjudicate the legality of the DHS policy.

Title 8, Section 1252 of the United States Code governs judicial review of orders of

removal.  Paragraph (e)(3)(A) addresses orders issued pursuant to 8 U.S.C. § 1225(b).  It

provides,

> Judicial review of . . . section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of . . . (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

Quite clearly, the plain text of the provision indicates that if an alien wants to declare the

entire DHS policy at issue here—an implementation of Section 1225(b)—unlawful, the sole

forum for his claim is the District for the District of Columbia.[17]  That conclusion is

bolstered in paragraph (e)(1)(A), which limits relief "except as specifically authorized in a

subsequent paragraph of this subsection"—that is, relief sought in compliance with the

venue-limiting clause of paragraph (e)(3).

The Central District concluded that it had jurisdiction because the petitioners

"maintain they are detained under [Section] 1226 and are therefore entitled to receive bond

hearings rather than remain in mandatory detention."  2025 WL 3289861, at *4.  But this

---

[17] An individual habeas petition, however, that seeks to declare that individual's detention unlawful, is not a challenge on the system as a whole and is thus permissible.  *See, e.g.*, *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 628 (D.C. Cir. 2020).

fine distinction is entirely belied by the complaint, the Central District's own reasoning, and the terms of the INA itself.

First, consider the class-action complaint at play in the Central District. It correctly identifies the challenged policy as falling under Section 1225(b). No. 5:25-CV-1873, Dkt. No. 15, *supra* n.5, at 14; *see supra* n.1 (DHS's policy describing itself as implementing Section 1225). The complaint then addresses ICE's implementation of the Section 1225 policy. No. 5:25-CV-1873, Dkt. No. 15, *supra* n.5, at 14–15. It identifies the class members' commonality as resting upon the "core common question of whether [Section] 1225(b)(2)'s mandatory detention provisions apply to them and prevent them from being considered for release on bond under [Section] 1226(a) and its implementing regulations." *Id.* at 26. True, the complainants say that ICE's actions violate Section 1226, but it is precisely because, in their view, "[t]he mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply," and ICE's enforcement under Section 1225 is unlawful. *Id.* at 28–29. Unsurprisingly, the complaint concludes with a request that the Central District declare unlawful the "policy and practice of denying consideration for bond on the basis of [Section] 1225(b)(2)." *Id.* at 34.

Additionally, the Central District's own reasoning admits that its orders review the implementation of a Section 1225(b) policy. In describing the nature of the claim, the Central District states: "*Because* of the new DHS Policy, [the] Petitioners were denied bond hearings." 2025 WL 3289861, at *2 (emphasis added). It continues: "[The] Petitioners filed a Petition for Writ of Habeas Corpus raising several challenges against the DHS change in policy." *Id.* Again: "[The] Petitioners amended their complaint to include . . . requests for declaratory relief as to the legality of [the] Respondents' policies relating to denying bond

hearings." *Id.* And again: "[S]eeking to view this case as moot ignores the reality that [the] Respondents have acted upon and maintain their position that [the] Petitioners are applicants for admission, and thus should be subject to mandatory detention under [Section] 1225(b)(2)." *Id.* at *5.

Finally, there is the plain language of the INA itself. It applies to "judicial review of . . . section 1225(b) of this title *and its implementation*." 8 U.S.C. § 1252(e)(3)(A) (emphasis added). The terms of the judicial-review clause "sweep[] broadly" and encompass "DHS internal memoranda" directing policy. *See Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 33 (D.D.C. 2020) (Jackson, J.). Indeed, the D.C. Circuit—which, as the court of review above the proper venue in *Maldonado Bautista*, would normally be the one to address the class's claims on appeal—has indicated that the phrase "'*its* implementation' . . . points directly to litigation over Section 1225(b)'s implementation" as a whole. *Make the Road N.Y.*, 962 F.3d at 625 (citing *United States v. Barnes*, 295 F.3d 1354, 1364 (D.C. Cir. 2002)) (emphasis in original).

In light of the above, the Central District's conclusion that the discretionary-detention provision is the subject of the suit is untenable. The petitioners in that case, of course, seek the relief normally afforded under the discretionary-detention provision. But the Central District does not dispute—nor does the petitioner in this case dispute—that the DHS policy implements mandatory detention that is justified by the mandatory-detention provision. On those clear terms, the Central District's orders—including its purported vacatur of the DHS policy—are issued in violation of the INA. Because the Central District's orders are beyond its jurisdiction, this Court rejects the petitioner's argument that the orders bind this Court and mandates relief here.

### b. The Central District further lacks authority to certify the Bond Eligible Class.

What is more, Section 1252(e) prohibits the type of relief sought. Paragraph (e)(1) limits class-actions challenging the implementation of Section 1225(b) to the District for the District of Columbia:

> Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may . . . (B) certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection.

The only relevant subsequent paragraph is paragraph (e)(3), the venue-limiting clause, as paragraphs (e)(2), (e)(4), and (e)(5) address a different provision of the INA that was not (and is not) at issue in *Maldonado Bautista*. The plain reading of paragraph (e)(1) is that no court—outside of the District for the District of Columbia—may certify a class-action for declaratory or vacatur relief against the unlawful implementation of detention under Section 1225(b)(2).

The Central District's response, again, portrays *Maldonado Bautista* as a dispute under Section 1226. *See* 2025 WL 3288403, at *2. But that fails for the reasons discussed immediately above. In addition, the Central District concluded "that the statutory text further supports the availability of class[-]wide declaratory relief" in light of Section 1252(e)(1)(A)'s application to Section 1225(b)(1). *Id.* at *8. But, once more, the D.C. Circuit has indicated that paragraph (e)(1)(B)'s ban on class actions applies to all Section 1225 claims, including the Section 1225(b) claims at issue here and in *Maldonado Bautista*. *Make the Road N.Y.*, 962 F.3d at 625–26. Because that dispute falls under the INA's bar on

judicial review, the purported class and the relief granted to it are nullities. So this Court cannot be bound by the Central District's orders.[18]

### B.    The necessary implications of the purported class-wide relief are inconsistent with Supreme Court precedent.

Suppose that the Central District's orders were not advisory, and suppose that the Central District had authority under the INA to review the *Maldonado Bautista* claim for class-wide declaratory and vacatur relief. What, then, is its effect?

According to the Central District, it means that all class members have "a right to an individualized bond hearing." 2025 WL 3288403, at *9; *see* No. 5:25-CV-1873, Dkt. No. 94 at 2 (declaring that class members "are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge"). The Central District reasons that "[v]acatur . . . would render the very DHS policy upon which immigration judges [and DHS] have cited as grounds for its denial of bond hearings as a nullity." No. 5:25-CV-1873, Dkt. No. 93 at 46–47. However, the Central District correctly recognizes that the INA and Supreme Court precedent in *Garland v. Aleman Gonzales*, 596 U.S. 543, 554–55 (2022), prohibit it from ordering class-wide injunctive relief to enforce its orders. *See* Dkt. No. 93 at 31 (discussing *Aleman Gonzales*); *id.* at 47–48 (conceding the Central District cannot order nationwide injunctive or habeas relief); *see also* 8 U.S.C. § 1252(f)(1) (limiting judicial review).

---

[18] There are a few circumstances where judicial review exists notwithstanding Congress' bar. *E.g.*, *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 232 (2020) (noting innate constitutional authority to hear certain habeas claims). But they are not relevant here, as the process-based claims of the *Maldonado Bautista* aliens are bound up in due process, and the Constitution only affords minimal due process protections to aliens who are in the United States illegally. *DHS v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020) (collecting cases).

There are two possible implications to draw from the Central District's claim to authority and from its class-wide declaratory and vacatur relief. Neither is consistent with Supreme Court precedent. Because this Court must follow Supreme Court precedent, it cannot grant the relief requested by the petitioner and bind itself to the Central District's orders.

The first implication from the Central District's order is that, as in any class action, the petitioner's claim here should be denied so that he can bring his claim in the same litigation as his fellow class members. *See, e.g.*, *Ramirez Melgar*, 2025 WL 3496721, at *15 (denying habeas relief in part because, assuming the Central District's orders are binding, relief is appropriate in the Central District only). The respondents urge that, if the Central District's orders are binding, this is the appropriate course of action. Dkt. No. 11 at 2–3. But this approach, though graced with the virtue of a single vehicle for litigation, runs counter to the traditional posture of a habeas claim. When challenging detention, a petitioner by "default" must sue "the warden of the facility where [he] is being held, not the Attorney General or some other remote supervisory official." *Padilla*, 542 U.S. at 435. Indeed, "[t]he plain language of the habeas statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 443.

There are ninety-four United States District Courts. Ninety-three of them are not the Central District of California. It is impossible to reconcile the Supreme Court's requirement of suit within the district of detention with a system whereby individual class members from the other ninety-three districts must file in the Central District to secure individual habeas relief. *See id.* Even then, the wardens who detain these men and women are not currently

defendants in the *Maldonado Bautista* class action.[19]  This approach is thus inconsistent with binding Supreme Court precedent.

The second implication fares no better.  It is the one the petitioner in this case, and the petitioners in many others, have asserted.  *See supra* nn. 8–13.  The theory runs as follows: the petitioners, consistent with the immediate-custodian rule, will continue to sue in the district of their confinement, but the nationwide class requires that the local federal district judge accept the Central District's declarations of law as binding.  Then, having done so, the local district judge must order the class member relief in the form of an individualized bond hearing.  *See* Dkt. No. 9 at 2.  In other words, the petitioner asserts that this Court submit to a type of "Simon Says" arrangement with the Central District.

That proposition is even less acceptable than the last.  It would require courts to neuter the Supreme Court's holding in *Aleman Gonzales* that the INA prohibits class-wide injunctive relief.  596 U.S. at 554–55.  Petitioners would use the Bond Eligible Class as a vehicle to order district courts to grant as individual relief that which is barred by the INA and Supreme Court precedent.  The INA would only narrowly stop technical intrusions into federal immigration policy and flood district courts with the binding orders of whichever judge certifies a class and first asserts authority over petitioners in the other ninety-three districts.

It should also be clear from this result alone that this case resembles a type of order that the Supreme Court recently held to exceed a federal district court's statutory authority:

---

[19] If such an action could be sustained at all, there is something daunting—if not destructive of the nature of a class action—in convening a congress of defendants from Boston, Massachusetts; Newark, New Jersey; Madisonville, Kentucky; Anson and Eden, Texas; and hundreds of locales from around the Nation to come and submit to the judgment of the Central District.

the universal injunction.  In *CASA*, the Supreme Court held that universal injunctions "likely exceed the equitable authority that Congress has granted to the federal courts" through the Judiciary Act of 1789 and its statutory descendants.  606 U.S. at 837.  The Court stated that federal district judges may only grant relief that is identical or analogous to the type of equitable relief afforded at the founding, particularly in the English High Court of Chancery.  *Id.* at 841–42.

Universal injunctions failed this bar.  Founding-era "suits in equity were brought by and against individual parties" and "remedies were also typically party specific."  *Id.* at 842.  The bill of peace, which gave rise to the Rule 23 class action, "involved a 'group [that] was small and cohesive,'" "did not 'resolve a question of legal interpretation for the entire realm,'" and bound all class members to its judgment.  *Id.* at 848 (quoting Samuel Bray, Multiple Chancellors: Reforming the National Injunction, 131 Harv. L. Rev. 417, 425 (2017)).

*Maldonado Bautista* is a Rule 23 class action.  But its asserted compliance with the Rule does not render its unusual form of relief consistent or analogous to the bill of peace as described in *CASA*.  The group here is not small: it includes every alien now in the United States who entered illegally and escaped apprehension, as well as all future aliens who will do the same.  2025 WL 3288403, at *9.

More importantly, this class seeks to resolve a question of interpretation for the entire Nation and, in this line of implication, *still* does not bind any of its class members from seeking individual relief.  The difference between this action and a true universal injunction is meaningless.  Once more, there would be a system by which the "plaintiff must win just one suit to secure sweeping relief," and where, "to fend off such an injunction, the

Government must win everywhere." *CASA*, 606 U.S. at 855; *see Ramirez Melgar*, 2025 WL 3496721, at *15. Indeed, this system is even more concerning than the last, because the lack of injunctive relief in the class-wide order means that new cases will arise—potentially seeking the same broad relief—even as the *Maldonado Bautista* litigation progresses. The government could ultimately prevail on appeal in *Maldonado Bautista*. But until that day comes, it must fend off thousands of additional cases addressing the same issue that claim the Central District's orders are binding, and it would face the real risk that other district courts will take the same improper approach, creating an unending minefield of class-action claims.

Perhaps, buried in the annals of history, there is a beast of litigation that resembles the power of the universal injunction and has half of the appearance of the class action. But that is doubtful. Though a class action in name, the implications of the Central District's orders are nothing more than a "class-action workaround." *CASA*, 606 U.S. at 850.

To be clear: this Court does not challenge the efficacy of valid vacatur challenges or the ability of courts to enter universal relief where the APA permits or precedent requires. *See CASA*, 606 U.S. at 869 (Kavanaugh, J., concurring) (suggesting that vacatur remains a permissible path to relief). Were the Central District's class action permitted under the relevant statutes and did not require this Court to join in the Central District's error, it would not be necessary to address the implications of its decisions. But where statutory law and Supreme Court precedent constrain the power of a district judge to grant relief, it may not cross those bounds; nor may a judge direct other judges to do so. The only two implications that could follow from the Central District's orders would require this Court to reject the Supreme Court's precedents in *Aleman Gonzales* and *CASA*. This the Court will

not do.  For these reasons, too, the Court rejects the petitioner's contention that it is bound by the Central District's orders.

### 3.    Conclusion

The Court issues this Order with some reluctance.  The business of another court is generally beyond this Court's concern.  But the petitioner seeks relief based on the Central District's orders, leaving this Court no choice but to address their binding effect.  Here, a fellow district judge purports to bind all pending and future cases involving the mandatory-detention issue to her reasoning in an advisory opinion, disrupting this Court's extensive immigration docket and the dockets of fellow courts across the Nation.  But the Central District's orders are not binding because the Central District lacked authorization to issue them.  The orders are unauthorized because they are advisory and because they violate the INA's limits on judicial review.  Additionally, they would require this Court to act in defiance of Supreme Court precedent.  Thus, the Court rejects the petitioner's assertion that it is bound by the Central District's orders and must grant relief as a result.

Accordingly, the Court denies the petitioner's habeas petition (Dkt. Nos. 1;9) in part, insofar as relies on the *Maldonado Bautista* orders.  The Court will address the remainder of the petitioner's claims in due course, free to consider the Central District's reasoning as persuasive, but as nothing more.

So ordered on December 19, 2025.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE